IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs July 24, 2018 at Knoxville

**STATE OF TENNESSEE v. AMANDA C. ANDREWS**
**A.K.A. AMANDA C. PERKINSON**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-A-538, 2017-A-715, 2017-A-856      Cheryl A. Blackburn, Judge**

_____

**No. M2018-00253-CCA-R3-CD**

_____

Pursuant to a plea agreement, Amanda C. Andrews ("Defendant") pled guilty to five counts of aggravated burglary and was sentenced to fifteen years as a persistent offender with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court ordered Defendant to serve her sentence in the Department of Correction. Defendant claims the trial court erred by sentencing her to serve her sentence in the Department of Correction. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Manuel B. Russ (on appeal), and Anthony Q. Thompson (at hearing), Nashville, Tennessee, for the appellant, Amanda C. Andrews a.k.a. Amanda C. Perkinson.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and Jordan Hoffman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural History**

On March 10, 2017, the Davidson County Grand Jury indicted Defendant in Case No. 2017-A-538 on four counts of theft of property in the value of $1,000 or less, two counts of possession of a controlled substance, one count of possession of drug

paraphernalia, five counts of criminal impersonation, three counts of aggravated burglary, and two counts of forgery. On March 30, 2017, the Davidson County Grand Jury indicted Defendant in Case No. 2017-A-715 on one count of aggravated burglary and one count of theft of property in the value of $1,000 or less and in Case No. 2017-A-856 on one count each of aggravated burglary and theft of property in the value of $1,000 or less, three counts of fraudulent use of a credit card, four counts of identity theft, and one count of forgery.

On January 4, 2018, Defendant filed a "Petition to Enter Guilty Plea" to three counts of aggravated burglary in Case 2017-A-538, one count of aggravated burglary in Case No. 2017-A-715, and one count of aggravated burglary in Case No 2017-A-856. The petition outlined a plea agreement with the State in which Defendant would receive a sentence of fifteen years as a Range III persistent offender, all other counts would be dismissed, and the manner of service would be determined by the trial court.

On February 14, 2018, the trial court conducted a sentencing hearing. The Davidson County Community Corrections Program Pre[]sentence Report ("the presentence report") was entered as exhibit one, a Grundy County judgment of conviction was entered as exhibit two, Victim Impact Statements were entered as exhibit three, and a letter from Defendant's mother was entered as exhibit four.

The State announced that it had several victims available to testify. The trial court asked to hear from Mickie Joan Halliburton. Ms. Halliburton stated that she was confined to a wheel chair and that, on the day of the burglary, her caregiver was supposed to come to her residence. She said it was a snowy day, but no one informed her that her caregiver was not coming. According to Ms. Halliburton, Defendant knocked on the door, pushed her way in, sat down at her table, and said she was a nurse and was there to check Ms. Halliburton's medications and to make sure she was okay. After going through Ms. Halliburton's medicines, Defendant asked Ms. Halliburton if she took "pain meds." Ms. Halliburton told Defendant the pain medications were locked in the safe because they had been stolen previously. Defendant said she needed to see them. Ms. Halliburton said that, the next day, she discovered that Defendant stole her Oxycodone, and she called the police. Ms. Halliburton later identified Defendant from a photographic lineup.

Following Ms. Halliburton's testimony, the State explained that Fahir Mohammed had approached a group of victims and told them that "everyone makes mistakes and that a black man put a gun to [Defendant's] head and made her do these things." The trial court asked to hear from Mr. Mohammed. Mr. Mohammed testified that he had known Defendant for two years and that Defendant was his wife, and they had three children. He claimed that, when they met, she was on probation for a Grundy County conviction,

- 2 -

she was working full-time, and she was not doing drugs. He said her situation deteriorated around Thanksgiving 2016 when her father passed away. He said Defendant started taking drugs again, and by December, she was arrested on new charges. He said Defendant was receiving text messages from a man stating that she owed him money for drugs and that, if she did not "come up with the money[,]" he would kill her. On cross-examination, Mr. Mohammed admitted that he was not legally married to Defendant. He stated that he called community corrections in an attempt to help Defendant.

Defendant testified that, when she was 26 years old, she got into a relationship with a drug addict who introduced her to drugs, and she began taking Xanax.[1] She stated the drug addict was the father of her two oldest children. She said in 2010 she received additional charges in Knox County and served less than one year.[2] She said in 2015, she was charged in Grundy County and was sentenced to community corrections.[3] She said that she got a job in Davidson County, met Mr. Mohammed, and stayed off drugs until her father died. She then relapsed and began committing burglaries and thefts. She admitted that she would "typically . . . enter[] residences where [she would] pretend[] to be some type of caretaker or Medicare worker, that type of thing[.]" She denied that she was targeting a "particularly vulnerable group." Defendant admitted that she had a plea offer on pending charges in Wilson County to ten years concurrent with her Davidson County sentence. She admitted that she had been on probation three times, that she had violated probation two times, and that she was on community corrections when she committed the current offenses.

Melony Clinard testified that she was a community corrections officer tasked with supervising Defendant when Defendant's supervision was transferred from Grundy County to Davidson County. Ms. Clinard said Defendant complied with the terms of her supervised release from mid-2016 until January of 2017. She stated that she received a call from Mr. Mohammed stating that Defendant had relapsed and that he wanted her to get help. Defendant missed her scheduled appointment, so they contacted her and told her to report January 6, 2017. When Defendant failed to report, a warrant was issued on

---

[1] The presentence report stated that Defendant pled guilty in McMinn County on September 10, 2007, to two counts of theft in the value of $500 or less and two counts of burglary other than habitation and was sentenced to three years' probation, and that on October 1, 2007, she pled guilty in McMinn County to forgery, burglary other than habitation, and theft in the value of $500 or less and was sentenced to four years' probation.

[2] The presentence report stated that on June 24, 2011, Defendant pled guilty in Knox County to aggravated burglary and identity theft and was sentenced to three years to serve concurrent with the McMinn County sentence.

[3] The presentence report stated that on June 13, 2016, Defendant pled guilty in Grundy County to theft over $1,000 and was sentenced to seven year's community corrections.

January 17 out of Grundy County. The next day an amended warrant was signed based on the new charges in Davidson County.

At the conclusion of the sentencing hearing, the trial court announced its ruling. The trial court noted that both the length of the sentence and offender class were negotiated as part of the plea agreement and that, because of the length of the sentence, community corrections was the only alternative sentence available. The court stated that it had considered the principles of sentencing outlined at Tennessee Code Annotated section 40-35-102, the evidence at the sentencing hearing, the presentence report, the needs assessment for Defendant, the nature of the criminal conduct, the circumstances of the offense, and the statistical information provided by the Administrative Office of the Courts.

The trial court found that Defendant was on community corrections release when she committed the Davidson County offenses, she had not taken responsibility for her actions, and she had not shown a potential for rehabilitation. The trial court also found that she had an extensive criminal history because Defendant had nine prior felony convictions and ten prior misdemeanor convictions, and she had repeatedly failed to comply with measures less restrictive than confinement because Defendant had violated probation on two occasions and community corrections once. Based on these findings, the court ordered Defendant to serve her sentence in the Department of Correction.

Following the entry of judgments of conviction on February 14, 2018, trial counsel was allowed to withdraw and new counsel was appointed. On February 15, 2018, Defendant filed her notice of appeal.

**Analysis**

On appeal, Defendant claims the trial court erred by sentencing her to fifteen years' confinement. The State argues that the trial court properly sentenced Defendant. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). In *State v.*

*Caudle*, 388 S.W.3d 273, 278-79, the supreme court expanded its holding in *Bise* to trial courts' decisions regarding alternative sentencing.

The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210 (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2017).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

>        (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

>        (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

>        (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2017).

The intent of the Community Corrections Act was to "[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent

felony offenders." Tenn. Code Ann. § 40-36-103(1) (2017).  Eligible offenders under the Community Corrections Act include:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

(B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and

(F) Persons who do not demonstrate a pattern of committing violent offenses.

§ 40-36-106(a)(1)(A)-(F) (2017).

Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right." *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998) (citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987)).  Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter."  Tenn. Code Ann. § 40-36-106(d) (2017).

In this case, the record shows that the trial court considered the purposes and principles of sentencing as well as the factors relevant to imposing a sentence of confinement.  The record supports the trial court's findings that Defendant had an extensive history of criminal offenses, that measures less restrictive than confinement had on multiple occasions been unsuccessfully applied to Defendant, and that Defendant was released on community corrections at the time she committed the offenses.

- 6 -

**Conclusion**

The trial court did not abuse its discretion when it denied Defendant's request for an alternative sentence.  Accordingly, we affirm the judgments of the trial court.


_____
ROBERT L. HOLLOWAY, JR., JUDGE